**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALLIED WORLD NATIONAL ASSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SITO MOBILE, LTD.; GERALD F. HUG, and KURT W. STREAMS,<br><br>Defendants. | Case No.:<br><br>Civil Action<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff, Allied World National Assurance Company ("Allied World"), by and through its attorneys, Kennedys CMK LLP, brings this Complaint for Declaratory Judgment against Defendants SITO Mobile, Ltd., Gerard F. Hug, and Kurt W. Streams, and alleges as follows:

**INTRODUCTION**

1. This insurance coverage action arises from an underlying lawsuit commenced on August 12, 2019 by the Securities and Exchange Commission (the "SEC Enforcement Action") against Allied World's insureds, Gerard F. Hug and Kurt W. Streams (collectively, the "Insured Persons").

2. Allied World issued a $5 million Excess Directors & Officers Liability Insurance Following Form Policy (the "Allied World Excess Policy") to SITO Mobile, Ltd. ("SITO") for the May 31, 2016 to May 31, 2017 Policy Period. The Allied World Excess Policy attaches excess of the $5 million primary policy (the "Primary Policy") issued by Federal Insurance Company ("Chubb").

3. By letter dated October 15, 2020, Mr. Hug provided notice, for the first time, of the SEC Enforcement Action under the Allied World Excess Policy. To date, Mr. Streams has not

provided notice or sought coverage under the Allied World Excess Policy in connection with the SEC Enforcement Action.

4. Because Mr. Hug did not provide notice of the SEC Enforcement Action to Allied World until October 15, 2020, over fourteen (14) months after the SEC filed the SEC Enforcement Action, Mr. Hug breached a condition precedent to coverage under the Allied World Excess Policy.

5. Because Mr. Streams has not provided notice of the SEC Enforcement Action to date, Mr. Streams breached a condition precedent to coverage under the Allied World Excess Policy.

6. Allied World therefore seeks a declaration that it is not required to provide coverage for the Insured Persons under the Allied World Excess Policy in connection with the SEC Enforcement Action.

## VENUE AND JURISDICTION

7. Allied World maintains its principal place of business in New York and is incorporated under the laws of the State of New Hampshire. At all relevant times, Allied World was and is authorized to do business in the State of New Jersey.

8. SITO maintains its principal place of business in New Jersey and is incorporated under the laws of the State of Delaware.[1]

9. Gerard F. Hug is a resident and citizen of New Jersey. After joining SITO in 2011, Mr. Hug served as Chief Executive Officer ("CEO") and director of the company from August

---

[1] SITO is not a defendant in the SEC Enforcement Action, and SITO has not requested that Allied World provide SITO with coverage in connection with the SEC Enforcement Action. However, as the Named Insured under the Allied World Excess Policy, Allied World has named SITO as a party-defendant to this action in abundance of caution.

2014 until his resignation on February 17, 2017.  Mr. Hug transacts or has transacted business in New Jersey and within this District.

10. Kurt W. Streams is a resident and citizen of Connecticut.  Mr. Streams was SITO's Chief Financial Officer ("CFO") from November 2013 until his resignation on March 10, 2017, and SITO's Chief Operating Officer ("COO") from December 2016 until his resignation.  Mr. Streams transacts or has transacted business in New Jersey and within this District.

11. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this action involves a dispute between citizens of different states.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (c).

13. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties concerning their respective rights, duties and obligations under the Allied World Excess Policy.

## FACTUAL BACKGROUND

**A.     The SEC Document Request**

14. On March 17, 2017, the Securities and Exchange Commission issued a letter to SITO Mobile, Ltd., advising SITO Mobile, Ltd. that "the staff of the United States Securities and Exchange Commission is conducting an informal inquiry relating to the above-referenced matter to determine if violations of the federal securities laws have occurred.  In connection with this investigation, the staff requests that your client, SITO Mobile, Ltd. ("SITO") immediately preserve, and voluntarily provide us with, the information and documents set forth in the enclosed Attachment by 5:00 p.m., April 10, 2017."  (the "SEC Document Request").

**B.     The SEC Enforcement Action**

15.    On August 2, 2019, the SEC filed a complaint against Gerard F. Hug and Kurt W. Streams in in the United States District Court for the District of New Jersey, civil action number 19-cv-16290, asserting causes of action for:  (1) Fraud in Connection with the Purchase of Securities, Violations of Section 10(b) of the Exchange Act and Rule 10b-5; (2) Fraud in Connection with the Offer or Sale of Securities, Violations of Section 17(a)(1) of the Securities Act; (3) Fraud in Connection with the Offer or Sale of Securities, Violations of Section 17(a)(3) of the Securities Act; (4) False Sarbanes-Oxley Certification, Violations of Rule 13a-14 (Defendant Hug); (5) False Sarbanes-Oxley Certification, Violations of Rule 13a-14 (Defendant Streams); (6) Lying to Auditors and Falsification of Books and Records, Violations of Rules 13b2-2 and 13b2-1 of the Exchange Act; and (7) Circumventing and Failing to Implement a System of accounting Controls, Violations of Section 13(b)(5) of the Exchange Act.  See Exhibit A.

16.    The SEC Enforcement Action remains pending in this Court.[2]

**C.     The Allied World Excess Policy**

17.    Allied World issued an Excess Directors & Officers Liability Insurance Following Form Policy to SITO Mobile, Ltd. for the May 31, 2016 to May 31, 2017 Policy Period.  See Exhibit B.  The Allied World Excess Policy provides a $5 million Limit of Liability, and attaches excess of the $5 million Primary Policy.  See Exhibit C.

18.    As amended by Endorsement 5, the Insuring Clause of the Allied World Excess Policy provides:

---

[2] Upon information and belief, we understand that Chubb is treating the SEC Enforcement Action as a Claim first made during the May 31, 2016 to May 31, 2017 Policy Period.

      The Insurer shall pay the individuals and entities insured under the Primary Policy (also referred to herein as the "Insured") for Loss after exhaustion by payments of all applicable underlying limits by either the Underlying Insurers as specified in Item 4 of the Declarations, the Insureds, any insurer under a difference-in-conditions policy written as specifically excess over the Limit of Liability provided by this Policy and/or any other party, subject to:

    A.    the terms and conditions of the Primary Policy as in effect the first day of the Policy Period;

    B.    the Limit of Liability as stated in Item 3 of the Declarations; and

    C.    the terms and conditions of, and the endorsements attached to, this Policy.

19.    The Allied World Excess Policy provides the following:

    **NOTICE:** **EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

20.    Section II.D.1 of the Allied World Excess Policy ("Loss Provisions") provides that "this Policy shall follow the notice of claim provisions of the Primary Policy, except as stated otherwise herein."

21.    Section II.D.2 of the Allied World Excess Policy provides that "notice hereunder shall be given to the Insurer at the address indicated in Item 8 of the Declarations."

22.    Item 8 of the Allied World Excess Policy's Declarations provides the following:

    **ITEM 8:**    ADDRESS OF INSURER FOR ALL NOTICES UNDER THIS POLICY:

5

        A.    Claim-Related Notices:
noticeofloss@awac.com

        B.    All Other Notices:
1690 New Britain Ave.
Farmington, CT 06032

23. Section VI. of the Primary Policy ("Reporting"), as amended by Endorsement 11, to which the Allied World Excess Policy follows form, provides, in relevant part, the following:

    (A)    The **Insureds**[3] shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of any **Claim** no later than:

        (1)    one hundred and eighty (180) days after this Policy expires and is renewed with the Company; provided, however, if the **Parent Organization** can provide to the Company's satisfaction that it was not reasonably possible for the **Insureds** to give such notice within the one hundred and eighty (180) day time period and that subsequent notice was given as soon as reasonably possible thereafter, the Company shall waive the foregoing time period; or

        (2)    sixty (60) days after: (a) this Policy expires or terminates and is not renewed with the Company; or (b) the expiration date of the Extended Reporting Period, if applicable.

    (B)    If during the **Policy Period** an **Insured** gives written notice to the Company of:

        (1)    circumstances which could give rise to a **Claim**;

        (2)    receipt of a written request to toll or waive a statute of limitations applicable to a **Wrongful Act**;

        (3)    an **Interview** or a **Securityholder Derivative Demand Investigation**; or

        (4)    a **request** for **Crisis Management Event Defense Costs**,

---

[3] Terms in **bold** are defined in the Primary Policy.

6

then any **Claim** subsequently arising from the circumstances, **Wrongful Act**, **Interview**, **Securityholder Derivative Demand Investigation** or **Crisis Management Event** described in Paragraph (B)(1) or (B)(2) or (B)(3) or (B)(4) above shall be deemed to have been first made during the **Policy Period** in which such written notice was first given by an **Insured** to the Company; provided any such subsequent **Claim** is reported to the Company as soon as practicable after the in-house general counsel or risk manager of the **Parent Organization** becomes aware of such **Claim**.

D. <u>Correspondence</u>

24. On March 18, 2017, the Insured provided Allied World with notice of the SEC Document Request. <u>See</u> Exhibit D.

25. By letter dated October 15, 2020, Kasowitz Benson Torres LLP, on behalf of Gerard F. Hug, wrote: "we write to prove notice under [the Allied World Excess Policy] of [the SEC Enforcement Action]." Kasowitz further noted that Chubb "is currently providing a defense in this matter," and "we will inform you if and when the primary policy limits near exhaustion." <u>See</u> Exhibit E.

26. By letter dated October 29, 2020, Kasowitz noted that "the Chubb Primary Policy is nearing exhaustion," and asked Allied World to "promptly confirm coverage in writing." <u>See</u> Exhibit F.

27. By letter dated October 30, 2020, Allied World explained that "because the Insured did not provide notice of the SEC Enforcement Action to Allied World until October 15, 2020, over 14 months after the SEC filed the SEC Enforcement Action, the Insured breached a condition precedent to coverage." See Exhibit G.

28. By letter dated November 10, 2020, Kasowitz challenged Allied World's denial of coverage for the SEC Enforcement Action, and requested "one last time that Allied promptly confirm coverage for Mr. Hug's defense costs in the SEC Enforcement Action." <u>See</u> Exhibit H.

29. By letter dated November 13, 2020, Allied World responded to the points raised in Kasowitz's November 10, 2020 letter, and maintained its denial of coverage for the SEC Enforcement Action. See Exhibit I.

## COUNT I

### (Declaratory Judgment – Late Notice)

30. Allied World repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

31. Under the Primary Policy, to which the Allied World Excess Policy follows form, "The Insureds shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of any Claim."

32. Under the Primary Policy, after a notice of circumstance has been provided during the Policy Period, "then any **Claim** subsequently arising from the circumstances, **Wrongful Act**, **Interview**, **Securityholder Derivative Demand Investigation** or **Crisis Management Event** described in Paragraph (B)(1) or (B)(2) or (B)(3) or (B)(4) above shall be deemed to have been first made during the **Policy Period** in which such written notice was first given by an **Insured** to the Company; provided any such subsequent **Claim** is reported to the Company as soon as practicable after the in-house general counsel or risk manager of the **Parent Organization** becomes aware of such **Claim**."

33. The SEC Document Request was a notice of circumstance provided during the Policy Period.

34. The SEC Enforcement Action is a "Claim subsequently arising from" the SEC Document Request.

8

35. However, Mr. Hug did not provide notice of the SEC Enforcement Action to Allied World until October 15, 2020, over 14 months after the SEC filed the SEC Enforcement Action.

36. To date, Mr. Streams has not provided Allied World with notice of the SEC Enforcement Action.

37. Therefore, the Insured Persons did not provide notice of the SEC Enforcement Action "as soon as practicable after the in-house general counsel or risk manager of the **Parent Organization** becomes aware of such **Claim**."

38. The Insured Persons' failure to provide notice of the SEC Enforcement Action in accordance with the terms of the Primary Policy, to which the Allied World Excess Policy follows form, is a breach of a condition precedent to coverage under the Allied World Excess Policy.

39. Allied World therefore has no obligation to provide coverage for Mr. Hug and Mr. Streams under the Allied World Excess Policy in connection with the SEC Enforcement Action.

40. As a result of the foregoing, an actual and justiciable controversy exists between Allied World and the Insured Persons regarding Allied World's purported obligations under the Allied World Excess Policy in connection with the SEC Enforcement Action.

41. Accordingly, Allied World is entitled to a declaration that it has no obligation to provide coverage to the Insured Persons under the Allied World Excess Policy with respect to the SEC Enforcement Action.

## COUNT II

### (Breach of Contract – Late Notice)

42. Allied World repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

43. For the reasons set forth above, the Insured Persons breached a condition precedent to coverage under the Allied World Excess Policy.

44. Therefore, the Insured Persons have breached the terms of the Allied World Excess Policy.

**WHEREFORE**, Plaintiff Allied World National Assurance Company prays for judgment as follows:

(a) For a declaration that Allied World has no duty to provide coverage for Gerard F. Hug and Kurt W. Streams in connection with the SEC Enforcement Action;

(b) For a judgment against the Defendants on Count II (Breach of Contract); and

(c) For such other relief as is just and equitable herein.

KENNEDYS CMK LLP

s/ Matthew J. Lodge
Matthew J. Lodge, Esq.
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, New Jersey 07920
(908) 848-6300
(908) 647-8390 Fax
Matthew.Lodge@Kennedyslaw.com
Attorneys for Plaintiff
Allied World National Assurance Company

Dated: November 13, 2020