# Kasowitz Benson Torres LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
Fax: (212) 506-1800

Jed I. Bergman
Direct Dial: (212) 506-1925
Direct fax: (212) 500-3245
jbergman@kasowitz.com

Atlanta
Houston
Los Angeles
Miami
Newark
San Francisco
Silicon Valley
Washington DC

November 10, 2020

BY U.S. Mail & Email (maurice.pesso@kennedyslaw.com)

Maurice Pesso
Kennedys Law LLP
120 Mountain View Boulevard
Post Office Box 650
Basking Ridge, NJ 07920

> Re:   Notice of Claim — *Securities and Exchange Commission v. Gerard F. Hug et al.*, 19-cv-16290-ES-ESK (D.N.J.) (the "SEC Enforcement Action")
> Insurer:             Allied World National Assurance Company ("Allied")
> Insured:             SITO Mobile Inc. f/k/a Single Touch Systems, Inc.
> Policy No.:          0309-6252
> Primary Insurer:     Chubb Insurance Company of New Jersey ("Chubb")
> Primary Policy No.:  8242-8396

Dear Mr. Pesso:

As you know, we represent the Insured, Gerard "Jerry" Hug ("Mr. Hug"). I write in response to your letter dated October 30, 2020 (the "10/30 Letter"), in which Allied takes the position that "coverage is not available for the SEC Enforcement Action under the Allied World Excess Policy," ostensibly "[b]ecause the Insured did not provide notice of the SEC Enforcement Action to Allied World until October 15, 2020, … [and thus] breached a condition precedent to coverage." 10/30 Letter at 1.[1] As set forth more fully below, Allied's position is completely without merit. It is belied by the facts, the governing policy language, and controlling law. We request one last time that Allied promptly confirm coverage for Mr. Hug's defense costs in the SEC Enforcement Action. If necessary, Mr. Hug will hold Allied fully responsible for its pretextual and bad-faith denial of coverage.

*First*, the relevant question is not whether the Insureds provided notice to Allied of "the SEC Enforcement Action." (10/30 Letter at 1.) Rather, as Section VI states expressly, the Insureds must provide "notice of any Claim." Here, the Insureds plainly did so. A "Claim" is defined, in Section XXIX (as modified by Endorsement/Rider No. 23), to include any "proceeding … against an Insured for a Wrongful Act, commenced by … the service of a civil

---

[1]   Capitalized terms used but not defined herein are as defined in the parties' prior correspondence. "Section" references are to the Chubb Primary Policy. The complaint in the SEC Enforcement Action (the "SEC Complaint") was provided to Allied on October 15, 2020.

KASOWITZ BENSON TORRES LLP

Maurice Pesso
November 10, 2020
Page 2

complaint or similar pleading." It is undisputed that Allied received timely notice of the securities class action, *Roper v. SITO Mobile et al.*, 2:17-cv-01106-ES-MAH (D.N.J.) (the "Securities Class Action"), which asserted securities claims against, among others, Mr. Hug.

On February 21, 2017, SITO's broker John Orr of Integro Group sent an email to the designated email address for claims ("noticeofloss@awac.com"), titled "NOTICE OF CLAIM – Insured: Sito Mobile, Ltd. f/k/a Single Touch Systems, Inc. – Claimant: Sandi Roper, et al.," giving notice of the claim "as respects all insureds, corporate and individual, who are subject to claims made," and attaching a copy of the original complaint in the Securities Class Action. Allied confirmed receipt that same day, in an email from Beth J. Davison, an Assistant Vice President in the Claims Operations Group, and followed-up with a March 23, 2017 letter from Diane M. Parker, Esq., a Vice President in the North American Claims Group, confirming receipt of the Securities Class Action Complaint, as well as the SEC Document Request (discussed below). Moreover, on June 29, 2017, Philip Miller of Alston & Bird emailed Ms. Parker a copy of the amended complaint in the Securities Class Action (the "Amended Complaint"). Accordingly, Allied had timely notice of a Claim based on the Securities Class Action.

The SEC Enforcement Action is part of the same Claim. Under Section IX, "[a]ll Related Claims shall be deemed a single Claim made in the Policy Period in which the earliest of such Related Claims was either first made or deemed to have been made in accordance with Section VI(B), Reporting." Section XXIX defines "Related Claims" to mean "all Claims based upon, arising from or in consequence of the same or related facts, circumstances or Wrongful Acts." There can be no doubt that the Securities Class Action and SEC Enforcement Action satisfy this definition: both actions allege that Mr. Hug violated the securities laws by, among other things, engaging in illicit expense reimbursement. *Compare, e.g.*, Amended Complaint ¶¶ 4, 89-90, 132-135, *with* SEC Complaint ¶¶ 1-2, 4-5, 11-13, 20-22, 27, 42-56, 60-62, 65-83. As "Related Claims," the SEC Enforcement Action is deemed part of the same "single Claim" as the Securities Class Action, properly made and noticed in the Policy Period. There was no separate obligation to provide notice of the SEC Enforcement Action as a condition to coverage.

*Second*, Allied concedes that on March 18, 2017, it received from the Insureds an inquiry letter and document request from the SEC (the "SEC Document Request") in connection with *In the matter of Sito Mobile Ltd.*, (MHO-13276). The SEC Document Request identified Mr. Hug as a potential target of the investigation by specifically requesting documents concerning, among other things, (i) "internal controls to prevent unauthorized employee expenses and/or misuse of corporate assets"; (ii) "accounting for employee expenses"; (iii) "the training and/or education of SITO employees Gerard Hug and Kurt Streams on the policies and procedures in [items (i) and (ii)]"; (iv) "charge cards and/or debit cards maintained by SITO and used by Gerard Hug"; and, (v) "expense reports created, drafted, approved, and/or submitted by Gerard Hug"; (vi) "audits of SITO's employee expenses."

Allied's receipt of the SEC Document Request thus constitutes timely notice of a Claim under Section VI(c), as amended by Endorsement/Rider No. 23, which defines "Claim" to include, *inter alia*, " any … investigation by an Enforcement Unit against an Insured for a Wrongful Act, commenced by the service of a written request from such Enforcement Unit upon

Kasowitz Benson Torres llp
Maurice Pesso
November 10, 2020
Page 3

an Insured Person compelling … document production and identifying such Insured Person as a target of such investigation, including a subpoena, civil investigative demand, grand jury subpoena, search warrant, target letter or Wells notice; provided that the Company shall take into reasonable consideration all extrinsic evidence presented by the Insured when determining whether such written request identifies such Insured Person as a target of such investigation." The SEC Enforcement Action is based on the same exact facts and circumstances, and is either the same "Claim," or a "Related Claim" that qualifies as "a single Claim." In either case, notice of the SEC Document Request was timely and sufficient.

*Third*, and alternatively, by providing Allied World with the SEC Document Request, the Insureds at a minimum provided notice of "circumstances that could give rise to a Claim" for purposes of Section VI(B). Under that same provision, "any Claim subsequently arising from the circumstances … described in Paragraph B(1) … shall be deemed to have been first made during the Policy Period in which such written notice was first given by an Insured to the Company." Even if the SEC Enforcement Action were deemed an independent Claim (which it is not), that Claim "aris[es] from the circumstances" identified in the SEC Document Request, and thus the SEC Document Request constitutes proper notice of that Claim within the policy period.[2] *See Benecard Servs., Inc. v. Allied World Specialty Ins. Co.*, 2020 WL 2842570, at *12-13 (D.N.J. May 31, 2020) (interpreting a similar Allied policy provision and finding that the claim at issue related back to the relevant policy period).

*Fourth*, and even if Allied did not receive proper notice (which it did), Allied's coverage position completely ignores the fact that it is an excess insurer, and follows form to the primary. Here, the primary carrier, Chubb, did not treat the SEC Enforcement Action as a separate Claim, as Allied now contends. To the contrary, as set forth in the November 2, 2020 email from Chubb's Tracy Tkac, on which you were copied, Chubb treated the Securities Class Action, the SEC investigation, and the SEC Enforcement Action as a single Claim, subject to a single policy limit. Allied's position under the Chubb Primary Policy is thus contrary to that taken by Chubb itself. Moreover, under New Jersey law, Mr. Hug was under no duty to provide Allied World, as an excess carrier, with separate notice of the Claim. Notice to the primary insurer sufficed. *See Am. Centennial Ins. Co. v. Warner-Lambert Co.*, 293 N.J. Super. 567, 575 (Sup. Ct. 1995) ("When a primary carrier/excess carrier relationship is involved, proper notice entails the primary carrier, not the insured, advising the excess carrier of the existence of the claim.").

*Fifth*, and even if Allied had not received timely notice – which, as shown above, it did – that would not be an appropriate basis to deny coverage absent a demonstration of prejudice. *See Gazis v. Miller*, 186 N.J. 224 (2006); *Cooper v. Gov't Employees Ins. Co.*, 51 N.J. 86 (1968); *Peskin v. Liberty Mut. Ins. Co.*, 219 N.J. Super. 479 (App. Div. 1987). Here, Allied has identified no prejudice. Nor could it. There has been no settlement or verdict that would

---

[2]  Though Section VI(B) goes on to require that separate notice of such a subsequent Claim should be "reported to the Company as soon as practicable after the in-house general counsel or risk manager of the Parent Organization becomes aware of such claim," that is not a condition precedent, and it only imposes obligations upon the Parent Organization – *not upon an individual Insured*. Even if Allied could establish that SITO Mobile failed to comply with that obligation, it would not be a basis to deny coverage to Mr. Hug.

KASOWITZ BENSON TORRES LLP

Maurice Pesso
November 10, 2020
Page 4

implicate Allied's coverage.  And it is only now, with the impending exhaustion of Chubb's primary coverage, that Allied's obligation to pay defense costs is triggered.

The decision cited in the 10/30 Letter, *Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 224 N.J. 189 (2016), is easily distinguished.  In that case the insured not only failed to provide timely notice but also entered into a settlement, in part, by assigning its E&O coverage claim to plaintiff without the insurer's input or participation.  Here, there have been no settlement or significant litigation decisions without Allied's consent.  Moreover, *Templo Fuente* involved notice to a primary insurer, not an excess carrier – a distinction that is significant because "[t]he primary insurer has certain duties and obligations that it owes to the excess insurer as a result of the distinctive relationship between the two carriers," including "properly disclosing and apprising the excess carrier of events which are likely to effect that carrier's coverage."  *Am. Centennial*, 293 A.2d at 575-76.  It defies logic and the reasonable expectations of the parties to posit, as Allied does, that even though the Insureds provided timely and sufficient notice to Chubb during the policy period, Allied nevertheless remains free to deny coverage – under the same policy language – because it (allegedly) did not independently receive notice directly from the Insured.

*Finally*, in view of Allied's apparent position that it never received timely notice of "circumstances which could give rise to" the SEC Enforcement Action, please promptly provide us with copies of all notices, correspondence, or other documents of any kind received from any Insured or their representatives (including attorneys and brokers) during the period between February 17, 2017 and May 31, 2018.

In sum, for all the forgoing reasons, Allied had timely notice of the Claim encompassing the SEC Enforcement Action, and has no basis to deny coverage.  Because the Chubb Primary Policy is on the verge of being exhausted, we will shortly be submitting invoices to Allied for Mr. Hug's defense costs.  We reiterate our demand that Allied promptly confirm coverage in writing.  Failure to do so will prejudice Mr. Hug, and we have been instructed to take all necessary and appropriate steps to protect our client's rights, all of which are fully reserved.  We invite you to contact us if you have any questions.

Sincerely,

Jed I. Bergman

cc:   Ffiona McDonough (Allied)

   Marc Kunney (EPIC Brokers)