# Kennedys

Our ref USA136.1003569

By Email

Jed I. Bergman, Esq.
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
JBergman@kasowitz.com

120 Mountain View Boulevard
Post Office Box 650
Basking Ridge, NJ 07920
USA

**t** +1 908.848.6300
**f** +1 908.647.8390

**kennedyslaw.com**

**t** +1 908 605 2903

maurice.pesso@kennedyslaw.com

November 13, 2020

Re:  Insurer:     **Allied World National Assurance Company**
     Insured:     **SITO Mobile, Ltd. ("SITO")**
     Policy No.:  **0309-6252 (the "Allied World Excess Policy")**
     Policy Period: **May 31, 2016 to May 31, 2017**
     Limits:      **$5 million x/s $5 million**
     Matter:      *SEC v. Hug et al.*, 19-cv-16290-ES-ESK (D. N.J.) (the "SEC Enforcement Action")

Dear Mr. Bergman:

As you are aware, our law firm represents Allied World National Assurance Company ("Allied World") with respect to the SEC Enforcement Action. We write in response to your November 10, 2020 letter in which you "request one last time that Allied promptly confirm coverage for Mr. Hug's defense costs in the SEC Enforcement Action."

In your November 10, 2020 letter, you acknowledge that the Insured did not provide Allied World with notice of the SEC Enforcement Action until October 15, 2020, over 14 months after the SEC Enforcement Action was filed. Your position is that because the SEC Enforcement Action is related to a circumstance or "Claim" reported during the Policy Period, the Insured therefore has no obligation to provide timely notice of the "subsequent Claim," *i.e.*, the SEC Enforcement Action. That is wrong. The Insured's reporting obligation under the Chubb Primary Policy, to which the Allied World Excess Policy follows form, applies to "any Claim," including the SEC Enforcement Action. In addition, the Chubb Primary Policy, to which the Allied World Excess Policy follows form, specifically provides that following a notice of circumstance, any "subsequent Claim" must be "reported to the Company as soon as practicable." Therefore, Allied World rejects your demand and maintains its denial of coverage based on the Insured's

Kennedys is a trading name of Kennedys CMK LLP. Kennedys Law LLP, a UK Limited Liability Partnership, is a partner of Kennedys CMK LLP

*Kennedys offices, associations and cooperations:*  Argentina, Australia, Belgium, Bermuda, Brazil, Chile, China, Colombia, Denmark, Dominican Republic, England and Wales, France, Guatemala, Hong Kong, India, Ireland, Israel, Italy, Mexico, New Zealand, Northern Ireland, Norway, Pakistan, Panama, Peru, Poland, Portugal, Puerto Rico, Russian Federation, Scotland, Singapore, Spain, Sweden, Thailand, United Arab Emirates, United States of America.

57648219.1

Jed I. Bergman, Esq.
November 13, 2020

**Kennedys**

breach of a condition precedent to coverage. We also address below the other arguments raised in your November 10, 2020 letter.

**I.     The Insured Must Provide Timely Notice of "Any Claim," including the SEC Enforcement Action.**

Section VI. of the Chubb Primary Policy, as amended by Endorsement 11, to which the Allied World Excess Policy follows form, provides, in relevant part, the following:

> (A) The **Insureds** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of any **Claim** no later than:
>
> (1) one hundred and eighty (180) days after this Policy expires and is renewed with the Company; provided, however, if the **Parent Organization** can prove to the Company's satisfaction that it was not reasonably possible for the **Insureds** to give such notice within the one hundred and eighty (180) day time period and that subsequent notice was given as soon as reasonably possible thereafter, the Company shall waive the foregoing time period; or
>
> (2) sixty (60) days after: (a) this Policy expires or terminates and is not renewed with the Company; or (b) the expiration date of the Extended Reporting Period, if applicable.
>
> (B) If during the **Policy Period** an **Insured** gives written notice to the Company of:
>
> (1) circumstances which could give rise to a **Claim**;
>
> (2) receipt of a written request to toll or waive a statute of limitations applicable to a **Wrongful Act**;
>
> (3) an **Interview** or a **Securityholder Derivative Demand Investigation**; or
>
> (4) a **request** for **Crisis Management Event Defense Costs**,
>
> then any **Claim** subsequently arising from the circumstances, **Wrongful Act**, **Interview**, **Securityholder Derivative Demand Investigation** or **Crisis Management Event** described in Paragraph (B)(1) or (B)(2) or (B)(3) or (B)(4) above shall be deemed to have

Jed I. Bergman, Esq.
November 13, 2020

**Kennedys**

been first made during the **Policy Period** in which such written notice was first given by an **Insured** to the Company; provided any such subsequent **Claim** is reported to the Company as soon as practicable after the in-house general counsel or risk manager of the **Parent Organization** becomes aware of such **Claim**.

In your November 10, 2020 letter, you acknowledge that Section VI. of the Chubb Primary Policy requires the Insured to provide timely "notice of any Claim." However, you then conclude, incorrectly, that this means the Insured can simply pick and choose which "Claim" to report when there are multiple "Claims" or a notice of circumstance. Under your reading, once an Insured provides notice of one "Claim," it no longer has any obligation to provide timely notice of any subsequent "Claims." That can't be right. If that were correct, then an Insured could simply report a subsequent "Claim" whenever it chooses, or never report a subsequent "Claim." The correct meaning of "notice of any Claim" is that the Insured must provide timely notice of each and every "Claim," including subsequent "Claims."

Allied World does not disagree that the SEC Enforcement Action may relate back to the March 18, 2017 SEC Document Request, which was noticed to Allied World during the Policy Period. The SEC Document Request was a document request addressed to Sito Mobile, Ltd., and did not identify any Insured Person "as a target of such investigation." Therefore, the March 18, 2017 SEC Document Request was a notice of circumstance only, not a "Claim" made against an Insured Person. When an Insured provides a notice of circumstance during the Policy Period, Section VI. of the Chubb Primary Policy, to which the Allied World Excess Policy follows form, specifically provides that any "subsequent Claim" (i.e., the SEC Enforcement Action) must be "reported to the Company as soon as practicable after the in-house general counsel or risk manager of the Parent Organization becomes aware of such Claim." You appear to acknowledge that the SEC Enforcement Action was not reported to Allied World "as soon as practicable."

In a footnote, you argue that the requirement to timely notice a subsequent Claim is "not a condition precedent, and it only imposes obligations upon the Parent Organization – not upon an individual Insured." Allied World is having a hard time following this argument. First, Section VI. of the Chubb Primary Policy, to which the Allied World Excess Policy follows form, mandates that timely notice of "any Claim" is a condition precedent to coverage. Every sentence of the notice provision does not have to reiterate this fact. Second, the notice obligation is with respect to the "Claim" or "circumstance," it is not severable or distinguishable depending on which Insured is the subject of the "Claim."[1]

---

[1] In fact, in light of Section XXIV. of the Chubb Primary Policy ("Role of Parent Organization"), the "Parent Organization" acts for the "Insured" with respect to a number of different items, except for "the giving of notice of a Claim, [or] circumstances which could give rise to a Claim." Therefore, because each individual

57648219.1                                                                                                                                3 of 7

Jed I. Bergman, Esq.
November 13, 2020

**Kennedys**

In your November 10, 2020 letter, you argue that because the SEC Enforcement Action and the Roper Securities Action are "Related Claims," the "SEC Enforcement Action is deemed part of the same single Claim as the Securities Class Action, properly made and noticed in the Policy Period."[2] As discussed above, this is incorrect because the reporting obligation under the Chubb Primary Policy, to which the Allied World Excess Policy follows form, applies to "any Claim," including subsequent "Claims." In any event, the Related Claims provision has no impact on timely notice. The Related Claims provision only determines when a "Claim" is made for policy placement purposes (not noticed) -- it does not relieve the Insured of its separate reporting obligations with respect to "any Claim." *See Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 734 F.Supp.2d 1304, 1321 (S.D. Fla. 2010), *aff'd sub nom. Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 453 F. App'x 871 (11th Cir. 2011) ("to say that a subsequent Claim relates back to the original Notice of Circumstances under the Section 7(c) relation back clause simply serves to identify the policy period in which the subsequent Claim was made…").

II.  **The Insured's Notice to Chubb Does Not Satisfy the Insured's Separate Notice Obligation under the Allied World Excess Policy.**

In your November 10, 2020 letter, you argue that because the Insured provided timely notice of the SEC Enforcement Action to Chubb, "Mr. Hug was under no duty to provide Allied World, as an excess carrier, with separate notice of the Claim." That is incorrect. The Allied World Excess Policy specifically provides the following:

> **NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER**

---

Insured has a separate obligation to provide notice of the "Claim," it would make no sense for the condition precedent language to only apply to the "Parent Organization."

[2] The initial complaint in the Roper Securities Action did not contain any corporate misappropriation allegations with respect to Mr. Hug. Those allegations did not first appear until the SEC filed an amended complaint on June 22, 2017, after expiration of the Allied World Excess Policy. Therefore, even assuming your argument on "Related Claims" and notice is correct (it is not), the SEC Enforcement Action does not even relate back to the Roper Securities Action in the first place. *See SunTrust Banks, Inc. et al. v. Certain Underwriters at Lloyd's of London et al.*, 2019 WL 5549369 (Ga. Super. Ct. Fulton County, May 17, 2019) (claims cannot be interrelated through "intermediate claims").

Jed I. Bergman, Esq.
November 13, 2020

**Kennedys**

Section II.D. of the Allied World Excess Policy provides the following:

> D. LOSS PROVISIONS
>
> 1. This Policy shall follow the notice of claim provisions of the Primary Policy, except as stated otherwise herein.
>
> 2. Notice hereunder shall be given to the Insurer at the address indicated in Item 8 of the Declarations.
>
> 3. The Insured shall provide the Insurer with such information, assistance and cooperation as the Insurer may reasonably request and as shall be in the Insured's power to provide and shall do nothing that may prejudice the Insurer's position or potential rights of recovery.
>
> 4. The Insurer shall maintain full and complete claims control as respects its portion of any claims or Losses arising under this Policy. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer, which consent shall not be unreasonably withheld, shall be recoverable as Loss under the terms of this Policy. The Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any claim.

Finally, the Allied World Excess Policy's Declarations provides the following:

> ITEM 8: ADDRESS OF INSURER FOR ALL NOTICES UNDER THIS POLICY:
>
> A. Claim-Related Notices: noticeofloss@awac.com
>
> B. All Other Notices:
> 1690 New Britain Ave.
> Farmington, CT 06032

The Allied World Excess Policy could not be more clear: if the Insured wants coverage under the Allied World Excess Policy, the Insured must provide timely notice <u>to Allied World</u>. In your November 10 letter, you cite *Am. Centennial Ins. Co.* in support of your argument that "notice to the primary insurer sufficed." That case did not address the specific notice provision in an excess claims-made insurance policy. Instead, in *Am. Centennial,* an excess insurer brought suit against its insured and the primary insurer. The excess insurer argued that it was prejudiced by

Jed I. Bergman, Esq.
November 13, 2020

**Kennedys**

inadequate notice that its policy limits were potentially implicated by an underlying products liability case. Therefore, *Am. Centennial* is not relevant.[3]

### III. Allied World Does Not Have to Show Prejudice.

In your November 10, 2020 letter, you argue that Allied World cannot deny coverage based on late notice "absent a demonstration of prejudice." You argue that *Templo Fuente* is "easily distinguishable" because: (1) in *Templo Fuente*, "the insured not only failed to provide timely notice but also entered into a settlement, in part, by assigning its E&O coverage claim to plaintiff without the insurer's input or participation"; and (2) "*Templo Fuente* involved notice to a primary insurer, not an excess carrier." Neither of these "distinctions" makes any difference or even factored into the court's holding in *Templo Fuente*. In *Templo Fuente*, the court, citing *Associated Metals & Minerals Corp. v. Dixon Chemical & Research, Inc.* and *Zuckerman v. National Union Fire Insurance Co.*, confirmed the well-established rule in New Jersey that a claims-made insurer does not have to show prejudice in order to deny coverage based on late notice:

> We hold that because this Directors and Officers "claims made" policy was not a contract of adhesion but was agreed to by sophisticated parties, the insurance company was not required to show that it suffered prejudice before disclaiming coverage on the basis of the insured's failure to give timely notice of the claim.

The Insured cannot get around the holding in *Templo Fuente* and its progeny.

\*     \*     \*

This letter does not address other terms, conditions and exclusions of the Allied World Excess Policy which may otherwise limit or preclude coverage for the SEC Enforcement Action. Allied World reserves the right to amend, alter and/or supplement this letter based upon receipt of any additional information discovered or provided. Nothing in this letter is intended to, nor should be interpreted to, modify, abridge or otherwise restrict any of Allied World's rights under the Allied World Excess Policy. Allied World continues to reserve all rights and defenses available under the Allied World Excess Policy, at law, and in equity.

---

[3] You also state that "Allied's position under the Chubb Primary Policy is thus contrary to that taken by Chubb." Allied World's position is not contrary to the position taken by Chubb. Allied World's position on notice is different from Chubb because unlike Chubb, Allied World did not receive timely notice of the SEC Enforcement Action.

Jed I. Bergman, Esq.
November 13, 2020

# Kennedys

      Please feel free to contact the undersigned with any questions or concerns you may have regarding this letter or Allied World's coverage position.

Sincerely,

*/s/ Maurice Pesso*

**Maurice Pesso**
Partner
for Kennedys

cc:     Via Email

        Ffiona McDonough (Ffiona.McDonough@awac.com)
        Lisa Patrick (lisa.patrick@sitomobile.com)
        John Hecker (JHecker@lockton.com)
        Richard Zahner (RZahner@lockton.com)